1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                         FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DENNIS WARD MCFADDEN;
     MARCIA-ANN: WILLARDSON,
11
                   Plaintiffs,                 No. 2:10-cv-03004 JAM KJN PS
12
             v.
13
     DEUTSCHE BANK NATIONAL
14   TRUST COMPANY, as Trustee, in
     trust for the registered holders of
15   ARGENT SECURITIES Inc., Asset
     backed Pass through Certificates,
16   Series 2003-W6, et al.,

17                 Defendants.          ORDER and FINDINGS AND
                                        RECOMMENDATIONS
18   _____/

19               Presently before the court[1] are several motions filed by various named defendants

20   in this case, which are addressed to plaintiffs' claims alleged in the Amended Complaint (Dkt.

21   No. 5): (1) defendants David J. Boyer and Robert Jackson & Associates, Inc.'s motion to

22   specially strike plaintiffs' claims pursuant to California's anti-SLAPP[2] statute, Cal. Civ. Proc.

23

24          [1]  This action proceeds before the undersigned pursuant to Eastern District of California
     Local Rule 302(c)(21) and 28 U.S.C. § 636(b)(1).
25
            [2]  The acronym "SLAPP" stands for "strategic lawsuit against public participation." Jarrow
26   Formulas, Inc. v. La Marche, 31 Cal. 4th 728, 732 n.1, 74 P.3d 737, 739 n.1 (2003).

                                                  1

1   Code § 425.16, and to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure

2   12(b)(6) (Dkt. No. 13); (2) defendant Citi Residential Lending, Inc.'s motion to dismiss

3   plaintiffs' claims pursuant to Rule 12(b)(6) (Dkt. No. 15); (3) defendants Fidelity National Title

4   Company and Default Resolution Network Division's motion to dismiss plaintiffs' claims

5   pursuant to Rule 12(b)(6) (Dkt. No. 16); and (4) defendants David J. Boyer, Robert Jackson &

6   Associates, Inc.,[3] Deutsche Bank National Trust Co., American Home Mortgage Servicing Co.,

7   and Power Default Services, Inc.'s motion to dismiss or for a more definite statement filed

8   pursuant to Rule 12(b)(6) and Rule 12(e) (Dkt. No. 18).[4]

9           The court heard this matter on its law and motion calendar on February 24, 2011.

10  (Minutes, Dkt. No. 27.)  Attorney Shar Bahmani appeared via telephone on behalf of defendants

11  David J. Boyer and Robert Jackson & Associates (collectively, the "Boyer Defendants"), as well

12  as defendants David J. Boyer, Robert Jackson & Associates, Inc., Deutsche Bank National Trust

13  Co., American Home Mortgage Servicing Co., and Power Default Services, Inc. (collectively, the

14  "Deutsche Bank Defendants").  Attorney Imran Hayat appeared on behalf of defendant Citi

15  Residential Lending, Inc. ("Citi").  Attorney Christine Starkie appeared on behalf of defendants

16  Fidelity National Title Company and Default Resolution Network Division (collectively, the

17  "Fidelity Defendants").  Plaintiffs, who are proceeding without counsel, appeared and

18  represented themselves at the hearing.

19          The undersigned has considered the briefs, oral arguments, and appropriate

20  portions of the record in this case and, for the reasons stated below, recommends that all of

21  plaintiffs' claims alleged against the Boyer Defendants, Citi, the Fidelity Defendants, and the

22
23          [3]  Curiously, defendants David J. Boyer and Robert Jackson & Associates, Inc. are parties
    to two different pleadings-based motions.

24          [4]  Plaintiffs initially failed to file a written opposition or statement of non-opposition to the
25  various motions.  (Order, Jan. 4, 2011, Dkt. No. 20.)  The undersigned continued the hearing date
    on the various motions and provided plaintiffs with additional time to file a written opposition.
    Plaintiffs filed a single, relatively non-responsive opposition to all of the pending motions.  (Pls.'
26  Oppn, Dkt. No. 21.)

1  Deutsche Bank Defendants be dismissed with prejudice.[5]

2  I.       BACKGROUND

3          Plaintiffs' Amended Complaint concerns the alleged unlawful foreclosure on, and

4  trustee's sale of, real property located at 10268 Pequot Lane in Nevada City, California.  (Am.

5  Compl. ¶ 4.)  Plaintiffs are not the borrowers who defaulted on the loan; Bryan Byrd Chagnon

6  and Shelley Y. Chagnon, who are husband and wife, are the borrowers.  On or around September

7  2, 2003, Bryan and Shelley Chagnon executed a promissory note in the amount of $256,000 in

8  favor of defendant Olympus Mortgage Company ("Olympus"), and the note was secured by a

9  deed of trust naming Olympus as lender, trustee, and beneficiary.  (Boyer Defs.' Req. For

10  Judicial Notice ("Boyer Defs.' RFJN"),[6] Ex. A, Dkt. No. 14; see also Am. Compl. ¶¶ 18-20.)  On

11  December 23, 2008, Olympus executed an Assignment of Deed of Trust, through Citi,

12  Olympus's "attorney-in-fact," in favor of defendant Deutsche Bank National Trust Company as

13  trustee ("Deutsche Bank").[7]  (Boyer Defs.' RFJN, Ex. B.)  The Chagnons defaulted on their loan,

14  and on December 26, 2008, a Notice of Default and Election to Sell Under Deed of Trust was

15  recorded.  (Id., Ex. C.)

16          It appears that plaintiffs now occupy the property; plaintiffs allege that they "live

17  on the Land."  (Am. Compl. ¶¶ 3a-3b.)  Plaintiffs allege that they are the "real party(s) in interest

18  and now hold the beneficial interest in the property by assignment."  (Id. ¶ 14.)  They further

19  allege that on June 5, 2010, plaintiff McFadden obtained a Quitclaim Deed pertaining to the

20

21          [5] The remaining named defendants are defendants Olympus Corporation, Stephanie Alonzo,
   and Natalie Gold.  None of these defendants has appeared in the action.  A clerk's entry of default
22  has been entered against Alonzo and Gold.  (Cert. of Clerk's Entry of Default, Dkt. No. 44.)

23          [6] The undersigned addresses the Boyer Defendants' and Deutsche Bank Defendants'
   respective requests for judicial notice below, in Section III.  Briefly stated, the undersigned grants
24  both requests for judicial notice in their entirety.

25          [7] Plaintiffs' allegations against Citi, which are sparse, relate only to Citi's role as "attorney-
   in-fact" for Olympus  in connection with the Assignment of the Deed of Trust.  (See Am. Compl.
26  ¶¶ 22-26.)

1  subject property, and judicially noticeable documents substantiate that McFadden and the

2  Chagnons executed a purported Quitclaim Deed conveying the property.  (Id. ¶ 16; Deutsche

3  Bank Defs.' Req. for Judicial Notice ("Deutsche Bank Defs.' RFJN"), Ex. 5, Dkt. No. 18, Doc.

4  No. 18-1.)  Plaintiffs further allege, and judicially noticeable documents support, that on June 11,

5  2010, a Grant Deed purporting to grant plaintiff Willardson fee simple title to the property was

6  recorded—the Grant Deed purports to convey the property to "Spiritual Alliances, Corporation

7  Sole, Marcia Ann Willardson, Public Minister."  (Am. Compl. ¶ 17; Deutsche Bank Defs.'

8  RFJN, Ex. 6.)  At the hearing, plaintiffs represented that through their private transactions with

9  the Chagnons, McFadden was somehow assigned an interest only in the "chattel paper," i.e., the

10 promissory note and the Deed of Trust, and Willardson was somehow assigned an interest only in

11 the physical property itself, free and clear of the Chagnon's existing obligations on the

12 promissory note and Deed of Trust.  McFadden stated at the hearing that the Chagnons received

13 approximately $3,500 as consideration for the purported assignment.

14         On June 18, 2010, after plaintiffs and the Chagnons conducted their transaction, a

15 Substitution of Trustee was recorded.  (Am. Compl. ¶ 29; Boyer Defs.' RFJN, Ex. D.)  The

16 Substitution of Trustee substituted defendant Power Default Services, Inc. as trustee under the

17 Deed of Trust, care of Fidelity National Title Company.[8]  (Id.)  The Substitution of Trustee

18 reflects that at that point, American Home Mortgaging Servicing, Inc. was the servicer of the

19 Chagnon's loan.  (Id.)

20         Also on June 18, 2010, a Notice of Trustee's Sale was recorded that noticed a sale

21 date of July 8, 2010.  (Boyer Defs.' RFJN, Ex. E.)  On September 17, 2010, a Trustee's Deed

22 Upon Sale in favor of Deutsche Bank was recorded, reflecting that the sale of the property

23 occurred on September 13, 2010.  (Id., Ex. F.)

24

25        [8] Fidelity National Title Company's role in this litigation is limited to its acts of recording
   documents, as an agent of the trustee, in connection with the loan and the foreclosure on and
26 trustee's sale of the property.  (See Am. Compl. ¶¶ 3f; Boyer Defs.' RFJN, Exs. A, D, E, and F.)

1        On or around September 30, 2010, McFadden found pinned to the wall of a

2    structure on the property a three-day notice to vacate the property.  (Am. Compl. ¶ 40.)  The

3    notice was signed by defendant David J. Boyer, an attorney with the law firm defendant Robert J.

4    Jackson and Associates.  (Id.; see also Boyer Defs.' RFJN, Ex. G, Exhibit B to Compl. for

5    Unlawful Detainer.)

6        On October 14, 2010, Deutsche Bank instituted, through attorneys at the firm of

7    Robert J. Jackson and Associates, an unlawful detainer action in the Nevada County Superior

8    Court, naming Bryan and Shelley Chagnon as defendants.  (Boyer Defs.' RFJN, Ex. G.)  Nothing

9    in the record suggests that a judgment has yet been entered in the unlawful detainer action, and

10   counsel for the Boyer Defendants represented at the hearing that he was unaware of any such

11   judgment.

12       On November 8, 2010, plaintiffs filed their complaint and, on November 10,

13   2010, filed the Amended Complaint.  Plaintiffs' Amended Complaint alleges thirteen claims for

14   relief against eleven named defendants and over 1,000 "Doe" defendants.  Plaintiffs

15   indiscriminately allege all of the following "counts," not all of which are actually stand-alone

16   claims for relief, against all of the named defendants: (1) violation of the Fair Debt Collection

17   Practices Act ("FDCPA"), 15 U.S.C. § 1692f; (2) violation of the FDCPA, 15 U.S.C.

18   § 1692e(2)(A); (3) violation of the FDCPA, 15 U.S.C. § 1692e(5); (4) negligence; (5) slander of

19   title; (6) "respondeat superior liability"; (7) "negligent or wanton hiring, supervision, training or

20   retention"; (8) "joint venture liability"; (9) wrongful foreclosure; (10) unjust enrichment;

21   (11) civil conspiracy; (12) fraudulent misrepresentation; and (13) declaratory relief.  Plaintiffs'

22   Amended Complaint is generally and vaguely pled in that plaintiffs failed to differentiate among

23   the various named defendants in terms of each named defendant's alleged conduct that gave rise

24   to each specific claim.

25   II.   EVIDENTIARY OBJECTION

26       With their written opposition, plaintiffs filed an attachment that consists of a

5

1  "Foreclosure Investigation Report" regarding the subject property, which was prepared by

2  Charles J. Horner and dated November 7, 2010 (the "Horner Report").  (See Attachment to Pls.'

3  Opp'n.)  Plaintiffs' opposition to the pending motions is largely premised on this report.  The

4  reply brief filed by the Fidelity Defendants includes an evidentiary objection to the Horner

5  Report.  (Reply Br. & Evid. Objection at 5-7, Dkt. No. 22.)

6        The undersigned sustains the Fidelity Defendants' evidentiary objection and has

7  not considered the Horner Report in reaching the recommendations set forth below.  The Horner

8  Report is not the proper subject of judicial notice, was not attached to the Amended Complaint,

9  and is not subject to consideration under the incorporation by reference doctrine.[9]  Accordingly, it

10 is not the proper subject of consideration in the context of motions to dismiss filed pursuant to

11 Federal Rule of Civil Procedure 12(b)(6).  Furthermore, the undersigned declines to convert the

12 pending motions into motions for summary judgment.

13 III.    REQUESTS FOR JUDICIAL NOTICE

14        In support of their respective motions, the Boyer Defendants and the Deutsche

15 Bank Defendants each filed requests for judicial notice.[10]  The Boyer Defendants request that the

16 court take judicial notice of documents labeled Exhibits A through G (Dkt. No. 14).  Specifically,

17 the Boyer Defendants seek judicial notice of: (a) a Deed of Trust dated September 2, 2003, which

18 was recorded with the Nevada County Recorder's Office[11] on September 10, 2003, as document

19

20    [9]  Plaintiffs only cite Federal Rule of Evidence 301 in support of the admissibility of the
21 Horner Report.  Rule 301 generally concerns the function of presumptions in civil cases and is
   irrelevant to the dispute regarding consideration of the Horner Report.

22    [10]  Many of the documents that are the subject of the requests for judicial notice are also
   appended to plaintiffs' original Complaint as Exhibits A through T.  However, plaintiffs did not file
23 those exhibits with their Amended Complaint.  Although plaintiffs' exhibits attached to the
   Complaint are technically before the court, the undersigned has considered those exhibits.  See Loux
24 v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967) ("The amended complaint supersedes the original, the latter
   being treated thereafter as non-existent.").

25

26    [11]  To the extent that the documents that are the subject of the requests for judicial notice
   were recorded, they were recorded with the Nevada County Recorder's Office.

6

1   number DOC-2003-0048457; (b) an Assignment of Deed of Trust dated December 23, 2008,

2   which was recorded on December 30, 2008, as document number DOC-2008-0030931-00; (c) a

3   Notice of Default and Election to Sell Under Deed of Trust dated December 23, 2008, which was

4   recorded on December 26, 2008, as document number DOC-2008-0030712-00; (d) a Substitution

5   of Trustee dated June 11, 2010, which was recorded on June 18, 2010, as document number

6   20100014235; (e) a Notice of Trustee's Sale dated June 18, 2010, which was recorded on June

7   18, 2010, as document number 20100014236; (f) a Trustee's Deed Upon Sale dated September

8   15, 2010, which was recorded on September 17, 2010, as document number 20100022243; and

9   (g) a summons, civil case cover sheet, and complaint pertaining to an unlawful detainer action

10  against Bryan and Shelley Chagnon, which was filed on October 14, 2010, in the Superior Court

11  of California, County of Nevada, as Case No. C10-224.  (See Boyer Defs.' RFJN, Exs. A-G.)

12          The Deutsche Bank Defendants' request for judicial notice (Dkt. No. 18, Doc. No.

13  18-1) is partially duplicative of the Boyer Defendants' request in that the Deutsche Bank

14  Defendants' Exhibits 2, 3, 4, 7, 8, 9, and 10 correspond with the Boyer Defendants' Exhibits A

15  through G.  The Deutsche Bank Defendants request that the court take judicial notice of three

16  additional documents numbered as Exhibits 1, 5, and 6: (1) a Grant Deed dated September 5,

17  2003, which was recorded on September 10, 2003, as document number DOC-2003-0048456-00;

18  (2) a Quitclaim Deed dated June 5, 2010, which was recorded on June 7, 2010, as document

19  number 20100013212; and (3) a Grant Deed dated June 5, 2010, which was recorded on June 11,

20  2010, as document number 20100013544.  (See Deutsche Bank Defs.' RFJN, Exs. 1, 5, and 6.)

21          The court may take judicial notice of matters of public record, but "may not take

22  judicial notice of a fact that is 'subject to reasonable dispute.'"  Lee v. City of L.A., 250 F.3d

23  668, 689 (9th Cir. 2001) (citing Fed. R. Evid. 201(b)).  Additionally, the court may take judicial

24  notice of filings in state court actions where the state court proceedings have a direct relation to

25  the matters at issue.  See, e.g., Betker v. U.S. Trust Corp. (In re Heritage Bond Litig.), 546 F.3d

26  667, 670 n.1, 673 n.8 (9th Cir. 2008); Bias v. Moynihan, 508 F.3d 1212, 1225 (9th Cir. 2007);

1  see also Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) ("We

2  may take judicial notice of court filings and other matters of public record.").

3          The undersigned grants the respective requests for judicial notice filed by the

4  Boyer Defendants and the Deutsche Bank Defendants.  The court may review these documents in

5  connection with the pending motions because they consist of public records that are not the

6  subject of reasonable dispute, directly relevant state court filings, or both.

7  IV.     LEGAL STANDARDS

8          A.     Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6)

9          A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6)

10  challenges the sufficiency of the pleadings set forth in the complaint.  Vega v. JPMorgan Chase

11  Bank, N.A., 654 F. Supp. 2d 1104, 1109 (E.D. Cal. 2009).  Under the "notice pleading" standard

12  of the Federal Rules of Civil Procedure, a plaintiff's complaint must provide, in part, a "short and

13  plain statement" of plaintiff's claims showing entitlement to relief.  Fed. R. Civ. P. 8(a)(2); see

14  also Paulsen v. CNF, Inc., 559 F.3d 1061, 1071 (9th Cir. 2009).  "A complaint may survive a

15  motion to dismiss if, taking all well-pleaded factual allegations as true, it contains 'enough facts

16  to state a claim to relief that is plausible on its face.'"  Coto Settlement v. Eisenberg, 593 F.3d

17  1031, 1034 (9th Cir. 2010) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)).  "'A claim

18  has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

19  reasonable inference that the defendant is liable for the misconduct alleged.'"  Caviness v.

20  Horizon Cmty. Learning Ctr., Inc., 590 F.3d 806, 812 (9th Cir. 2010) (quoting Iqbal, 129 S. Ct. at

21  1949).  The court accepts all of the facts alleged in the complaint as true and construes them in

22  the light most favorable to the plaintiff.  Corrie v. Caterpillar, 503 F.3d 974, 977 (9th Cir. 2007).

23  The court is "not, however, required to accept as true conclusory allegations that are contradicted

24  by documents referred to in the complaint, and [the court does] not necessarily assume the truth

25  of legal conclusions merely because they are cast in the form of factual allegations."  Paulsen,

26  559 F.3d at 1071 (citations and quotation marks omitted).

1        A motion to dismiss pursuant to Rule 12(b)(6) may also challenge a complaint's

2 compliance with Federal Rule of Civil Procedure 9(b) where fraud is an essential element of a

3 claim.  See Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9(b),

4 which provides a heightened pleading standard, states: "In alleging fraud or mistake, a party must

5 state with particularity the circumstances constituting fraud or mistake.  Malice, intent,

6 knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ.

7 P. 9(b).  These circumstances include the "time, place, and specific content of the false

8 representations as well as the identities of the parties to the misrepresentations."  Swartz v.

9 KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam) (citation and quotation marks

10 omitted); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) ("Averments

11 of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

12 charged.") (citation and quotation marks omitted).  "Rule 9(b) demands that the circumstances

13 constituting the alleged fraud be specific enough to give defendants notice of the particular

14 misconduct . . . so that they can defend against the charge and not just deny that they have done

15 anything wrong."  Kearns, 567 F.3d at 1124 (citing Bly-Magee v. California, 236 F.3d 1014,

16 1019 (9th Cir. 2001) (internal quotation marks omitted and modification in original).

17        The court must construe a pro se pleading liberally to determine if it states a claim

18 and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an

19 opportunity to cure them if it appears at all possible that the plaintiff can correct the defect.  See

20 Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) (en banc); accord Balistreri v. Pacifica

21 Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on a motion to dismiss pursuant to

22 Rule 12(b)(6), the court "may generally consider only allegations contained in the pleadings,

23 exhibits attached to the complaint, and matters properly subject to judicial notice."  Outdoor

24 Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899 (9th Cir. 2007) (citation and

25 quotation marks omitted).  Additionally, under the "incorporation by reference" doctrine, a court

26 may also review documents "whose contents are alleged in a complaint and whose authenticity

9

1   no party questions, but which are not physically attached to the [plaintiff's] pleading." <u>Knievel</u>

2   <u>v. ESPN</u>, 393 F.3d 1068, 1076 (9th Cir. 2005) (citation omitted and modification in original).

3   The incorporation by reference doctrine also applies "to situations in which the plaintiff's claim

4   depends on the contents of a document, the defendant attaches the document to its motion to

5   dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff

6   does not explicitly allege the contents of that document in the complaint." <u>Id.</u>

7         B.    <u>Anti-SLAPP Special Motion to Strike, Cal. Civ. Proc. Code § 425.16</u>

8         One of the motions before the court was filed, in part, pursuant to California's

9   anti-SLAPP statute, California Code of Civil Procedure § 425.16.  The Ninth Circuit Court of

10   Appeals has summarized the purpose and general mechanics of California's anti-SLAPP statute

11   as follows:

12         The anti-SLAPP statute establishes a procedure to expose and
      dismiss meritless and harassing claims that seek to chill the exercise of

13         petitioning or free speech rights in connection with a public issue.
      Analysis of an anti-SLAPP motion to strike involves a two-step process.

14         First, the defendant must show that the cause of action arises from any "act
      of that person in furtherance of the person's right of petition or free speech

15         under the United States or California Constitution in connection with a
      public issue. . . ." Cal. Code Civ. P. § 425.16(b)(1).

16

17         If the court determines that the defendant has met this burden, it
      must then determine whether the plaintiff has demonstrated a probability

18         of prevailing on the merits.  To establish a probability of prevailing, the
      plaintiff must show that "the complaint is both legally sufficient and
      supported by a sufficient prima facie showing of facts to sustain a

19         favorable judgment if the evidence submitted by the plaintiff is credited."

20   <u>Kearny v. Foley & Lardner, LLP</u>, 590 F.3d 638, 648 (9th Cir. 2009) (footnote and citations

21   omitted); <u>accord</u> <u>Metabolife Int'l, Inc. v. Wornick</u>, 264 F.3d 832, 839-40 (9th Cir. 2001); <u>Jarrow</u>

22   <u>Formulas, Inc.</u>, 31 Cal. 4th at 733, 74 P.3d at 740.  "The [anti-SLAPP] statute is to be 'construed

23   broadly.'" <u>Mindys Cosmetics, Inc. v. Dakar</u>, 611 F.3d 590, 595 (9th Cir. 2010) (citing Cal. Civ.

24   Proc. Code § 425.16(a), and <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1109 (9th Cir.

25   2003)).

26         Generally, a party may bring an anti-SLAPP special motion to strike in federal

court.  Thomas v. Fry's Elecs., Inc., 400 F. 3d 1206, 1206 (9th Cir. 2005) (per curiam); Vess, 317 F.3d at 1109.  But such a motion has limited reach.  A party may seek to specially strike state law claims brought in federal court on the basis of the court's diversity subject matter jurisdiction and state law claims that are supplemental to federal claims in a federal question jurisdiction matter. See Hilton v. Hallmark Cards, 599 F.3d 894, 900 n.2 (9th Cir. 2010) (stating that "we have long held that the anti-SLAPP statute applies to state law claims that federal courts hear pursuant to their diversity jurisdiction") (citing United States ex rel. Newsham v. Lockheed Missiles & Space Co., 190 F.3d 963, 970-73 (9th Cir. 1999)); Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 (N.D. Cal. 1999) ("[I]t appears that under the Erie analysis set forth in Lockheed the anti-SLAPP statute may be applied to state law claims which, as in this case, are asserted pendent to federal question claims.").  However, a party may not use an anti-SLAPP special motion to strike to seek the dismissal of claims based on federal law.  See Hilton, 599 F.3d at 901 (stating that "a federal court can only entertain anti-SLAPP special motions to strike in connection with state law claims"); accord Restaino v. Bah (In re Bah), 321 B.R. 41, 46 (B.A.P. 9th Cir. 2005) (holding that the anti-SLAPP statute does not apply to federal claims); Summit Media LLC v. City of L.A., 530 F. Supp. 2d 1084, 1094 (C.D. Cal. 2008) ("Several District Courts have determined that the Anti-SLAPP statute does not apply to federal question claims in federal court because such application would frustrate substantive federal rights."); Sonoma Foods, Inc. v. Sonoma Cheese Factory, LLC, 634 F. Supp. 2d 1009, 1016 (N.D. Cal. 2007) (same); Bulletin Displays, LLC v. Regency Outdoor Adver., Inc., 448 F. Supp. 2d 1172, 1180 (C.D. Cal. 2006) (same); Globetrotter Software, Inc., 63 F. Supp. 2d at 1130 (same).[12]

////

---

[12]  Decisions in this district are in accord.  See Barker v. Koff, No. 2:09-cv-00001-GEB-JFM, 2009 WL 2914146, at *2 (E.D. Cal. Sept. 9, 2009) (unpublished) (denying defendant's special motion to strike to the extent it sought dismissal of the federal claims alleged against them); Smith v. Cal. Dep't of Correction, No. CIV-F-06-0368 AWI SMS, 2006 WL 3518257, at *1 (E.D. Cal. Dec. 6, 2006) (unpublished) ("Anti-SLAPP may not be used against federal Section 1983 claims.").

1  V.      DISCUSSION

2              At the outset, the undersigned notes that plaintiffs' entire Amended Complaint is

3  subject to dismissal on the grounds that plaintiffs have not differentiated among the thirteen

4  named defendants in regards to those defendants' alleged conduct that gives rise to each

5  defendant's purported liability in this case.  Plaintiffs generally alleged all of their claims against

6  all of the named defendants and over 1,000 "Doe" defendants, leaving each defendant to guess

7  about its own allegedly unlawful conduct.  Plaintiffs' failure in this regard violates the most basic

8  pleading requirements of Federal Rule of Civil Procedure 8(a), and Rule 9(a) insofar as

9  plaintiffs' fraud claim is concerned.  However, the undersigned addresses below additional, fatal

10  deficiencies in the Amended Complaint that justify dismissal with prejudice.

11             The undersigned also notes that some of the moving defendants have asserted that

12  plaintiffs lack standing to bring this suit.  This argument potentially has merit given that plaintiffs

13  are not actually the borrowers who defaulted on the promissory note related to the subject

14  property.  However, in light of a lack of persuasive factual and legal bases for this argument

15  asserted by the various defendants, the undersigned assumes without deciding that plaintiffs have

16  standing to pursue this action.

17        A.      The Boyer Defendants' Anti-SLAPP Motion

18             The Boyer Defendants argue that all of plaintiffs' claims, whether grounded in

19  federal law or California state law, should be dismissed in response to their special motion to

20  strike, filed pursuant to California's anti-SLAPP statute, California Code of Civil Procedure

21  § 425.16.  These defendants, which consist of a law firm and one of its attorneys, contend that all

22  of the claims against them are subject to the anti-SLAPP statute because they arise from their

23  efforts to pursue an unlawful detainer action against plaintiffs in state court.  As explained below,

24  the undersigned recommends that the Boyer Defendants' anti-SLAPP motion be granted as to

25  plaintiffs' state law claims—claims four through twelve—but denied as to plaintiffs' claims

26  brought under federal law—claims one, two, three, and thirteen.

Plaintiffs' first, second, third, and thirteenth claims for relief are premised on federal law.  Plaintiffs' first through third claims allege violations of the FDCPA, and their thirteenth claim seeks declaratory relief.  As the standards set forth above provide, these federal claims are not the proper subject of an anti-SLAPP motion.  Accordingly, the Boyer Defendants' anti-SLAPP motion should be denied insofar as it is addressed to claims one, two, three, and thirteen.

Plaintiffs' state law claims consist of claims four through twelve.  The state law claims asserted by plaintiffs against the Boyer Defendants are the proper subject of a special motion to strike.  Those claims arise out of the Boyer Defendants' representation of their client, Deutsche Bank, in connection with the unlawful detainer action filed in the Nevada County Superior Court.

With respect to the first step of the anti-SLAPP analysis, the Boyer Defendants have demonstrated that plaintiffs' state law claims arise from protected activity, i.e., the acts of which plaintiffs complain were taken in furtherance of a right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.  See Cal. Code Civ. P. § 425.16(b)(1); see also Jarrow Formulas, Inc., 31 Cal. 4th at 733, 74 P.3d at 740.  Such protected acts include the following: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law . . . ."[13]  Cal. Code Civ. P. § 425.16(e).

The allegations contained in the Amended Complaint and the judicially noticeable documents filed in this case indicate that the Boyer Defendants' conduct of which plaintiffs

---

[13]  A defendant moving to strike a claim arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding is not required to separately demonstrate that the statement concerned an issue of public significance.  See Briggs v. Eden Council for Hope & Opportunity, 19 Cal. 4th 1106, 1123, 969 P.2d 564, 575 (1999).

complain relates to the Boyer Defendants' legal representation of Deutsche Bank in an unlawful detainer action in state court.  California courts have held that claims against an attorney arising out of that attorney's representation of his or her client are the proper subject of an anti-SLAPP special motion to strike.  See Rusheen v. Cohen, 37 Cal. 4th 1048, 1056, 128 P.3d 713, 717-18 (2006) ("A cause of action 'arising from' defendant's litigation activity may appropriately be the subject of a section 425.16 motion to strike" (citation omitted).); Jarrow Formulas, Inc., 31 Cal. 4th at 733, 74 P.3d at 740 (holding that malicious prosecution claim arising from attorney's representation of client was subject to anti-SLAPP statute); see also Zamos v. Stroud, 32 Cal. 4th 958, 965, 87 P.3d 802, 806 (2004) (same); Feldman v. 1100 Park Lane Assocs., 160 Cal. App. 4th 1467, 1479-80, 74 Cal. Rptr. 3d 1, 10-12 (Ct. App. 2008) (holding that the filing of an unlawful detainer action and the posting of notices that are prerequisites to maintaining such an action are "indisputably" subject to anti-SLAPP protection) (citing Birkner v. Lam, 156 Cal. App. 4th 275, 282-83, 67 Cal. Rptr. 3d 190, 195-96 (Ct. App. 2007)); White v. Lieberman, 103 Cal. App. 4th 210, 221, 126 Cal. Rptr. 2d 608, 614-15 (Ct. App. 2002) (holding that a malicious prosecution claim against attorney arising from attorney's representation of clients was subject to anti-SLAPP statute); Dowling v. Zimmerman, 85 Cal. App. 4th 1400, 1418-20, 103 Cal. Rptr. 2d 174, 188-90 (Ct. App. 2001) (attorney's representation of clients in prior unlawful detainer action that gave rise to plaintiff's claims of defamation, misrepresentation, and intentional and negligent infliction of emotional distress against the attorney constituted protected activity).  Accordingly, the Boyer Defendants have met the threshold requirement of their special motion to strike as to the state claims alleged against them.

Because the Boyer Defendants met their initial burden under California's anti-SLAPP framework, the burden shifts to plaintiffs to demonstrate a probability of prevailing on the merits, i.e., that their complaint is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited."  Kearny, 590 F.3d at 648.  Plaintiffs do not directly address the anti-SLAPP motion in

14

their written opposition.

The Boyer Defendants offer three arguments in support of their contention that plaintiffs are unable to demonstrate a probability of success.  First, the Boyer Defendants argue that plaintiffs' claims are not specific as to any named defendants.  As noted above, this argument is well-taken, but the undersigned addresses the Boyer Defendants' remaining arguments to determine whether dismissal of plaintiffs' claims should be with or without prejudice.

Second, the Boyer Defendants argue that plaintiffs' entire action is barred by the Rooker-Feldman doctrine as a collateral attack on a state court judgment, characterized as the unlawful detainer proceedings.  This argument is unpersuasive because there is no evidence of an actual state court judgment that plaintiffs are attempting to collaterally attack.

"Under Rooker-Feldman, a federal district court does not have subject matter jurisdiction to hear a direct appeal from the final judgment of a state court."  Noel v. Hall, 341 F.3d 1148, 1154 (9th Cir. 2003).  The Supreme Court has stated that the Rooker-Feldman doctrine occupies "narrow ground," Skinner v. Switzer, 131 S. Ct. 1289, 1297 (2011), and has held that it is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).[14]  "[W]hen a losing plaintiff in state court brings a suit in federal district court asserting

---

[14]   In Noel v. Hall, the Ninth Circuit Court of Appeals provided the following "general formulation" of the Rooker-Feldman doctrine:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court.  If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction.  If there is simultaneously pending federal and state court

as legal wrongs the allegedly erroneous legal rulings of the state court and seeks to vacate or set aside the judgment of that court, the federal suit is a forbidden de facto appeal." Noel, 341 F.3d at 1156. "Once a federal plaintiff seeks to bring a forbidden de facto appeal . . . , that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the forbidden de facto appeal is brought." Id. at 1158.

As a fundamental matter, the Rooker-Feldman doctrine does not apply here because there is no evidence that plaintiffs are attempting to directly or indirectly appeal a *judgment* of the Nevada County Superior Court entered before plaintiffs commenced this lawsuit in federal court. The Supreme Court's most recent formulations of this narrow doctrine require that the appeal sought by the "state-court loser" be of a state-court judgment rendered before the district court proceedings commenced. See Exxon Mobile Corp., 544 U.S. at 284; accord Skinner, 131 S. Ct. at 1297. Here, plaintiffs' Amended Complaint and the Boyer Defendants' motion and request for judicial notice do not evidence a state court judgment that is the subject of any de facto appeal. The Boyer Defendants only submitted the complaint in the state court unlawful detainer action (Boyer Defs.' RFJN, Ex. G), and at the hearing counsel for the Boyer Defendants stated that he did not believe that a judgment had been entered in Deutsche Bank's favor in the unlawful detainer action. Accordingly, Rooker-Feldman does not apply.[15]

---

> litigation between the two parties dealing with the same or related issues, the federal district court in some circumstances may abstain or stay proceedings; or if there has been state court litigation that has already gone to judgment, the federal suit may be claim-precluded under § 1738. But in neither of these circumstances does Rooker-Feldman bar jurisdiction.

Noel, 341 F.3d at 1164.

[15]   To the extent that the Boyer Defendants contend that plaintiffs' claims here are "inextricably intertwined" with the underlying unlawful detainer action and thus barred by the Rooker-Feldman doctrine, that contention is not persuasive. The Rooker-Feldman doctrine's "inextricably intertwined" rule does not apply when, as in this case, there has been no "de facto" appeal. See Noel, 341 F.3d at 1158; accord Manufactured Home Cmtys. Inc. v. City of San Jose, 420 F.3d 1022, 1030 (9th Cir. 2005); Maldanado v. Harris, 370 F.3d 945, 950 (9th Cir. 2004). On the record presented here, plaintiffs' claims do not constitute a de facto appeal. Accordingly, a

Third, the Boyer Defendants argue that plaintiffs have failed to state cognizable

claims as a matter of law under the Rule 12(b)(6) standard.  The undersigned addresses the Boyer

Defendants' arguments in this regard below, along with the other defendants' similar arguments.

In short, the undersigned concludes that all of the claims asserted against the Boyer Defendants

should be dismissed with prejudice, and claims four through twelve should be specially stricken

pursuant to the anti-SLAPP statute.

        B.     <u>The Defendants' Motions To Dismiss For Failure to State A Claim</u>

        1.     <u>Plaintiffs' FDCPA Claims (Claims 1-3)</u>

Plaintiffs' first three claims allege violations of the FDCPA.  Plaintiffs allege

violations of 15 U.S.C. §§ 1692f, 1692e(2)(A), and 1692e(5) in claims one, two, and three,

respectively.[16]  (<u>See</u> Am. Compl. ¶¶ 47-61.)  As noted above, plaintiffs' claims almost entirely

fail to delineate which defendants are alleged to have committed which acts in violation of the

FDCPA.  Although the various defendants offer several theories in support of dismissal, all of

the moving defendants argue that dismissal with prejudice is warranted because they are not

"debt collectors" within the meaning of the FDCPA and that even if they were to be considered

debt collectors, the acts of foreclosing on a property pursuant to a deed of trust is not considered

---

condition precedent to application of the "inextricably intertwined" rule is absent.

    [16]  Also underlying plaintiffs' FDCPA claims is the thoroughly rejected argument that only the holder of the original note can proceed with a non-judicial foreclosure.  (<u>See</u> Am. Compl. ¶¶ 55, 59.)  Plaintiffs' claims are subject to dismissal to the extent they rely on the "original holder" or "holder in due course" theories.  California law "does not require possession of the note as a precondition to non-judicial foreclosure under a Deed of Trust." <u>Alicea v. GE Money Bank</u>, No. C 09-00091 SBA, 2009 WL 2136969, at *2 (N.D. Cal. July 16, 2009) (unpublished); <u>see also Bennett v. One West Bank</u>, No. 10cv1884–BTM (RBB), 2011 WL 2493699, at *5 (S.D. Cal. June 23, 2011) (unpublished) ("Plaintiff contends that foreclosure would be invalid because Defendants do not possess the original note.  This holder in due course argument has been consistently rejected by the courts.  It is well-settled under California law that non-judicial foreclosures can be commenced without producing the original promissory note.") (citations omitted); <u>accord Ngoc Nguyen v. Wells Fargo Bank, N.A.</u>, 749 F. Supp. 2d 1022, 1035 (N.D. Cal. 2010); <u>McCain v. Bank of Am., NA</u>, No. CIV 10-1266 JAM KJM PS, 2010 WL 4323044, at *1 (E.D. Cal. Oct. 26, 2010) (unpublished) (collecting cases); <u>De Valle v. Mortgage Bank of Cal.</u>, No. CV-F-09-1316 OWW/DLB, 2010 WL 1813505, at *13 (E.D. Cal. May 5, 2010) (unpublished) (collecting cases); <u>Nool v. HomeQ Servicing</u>, 653 F. Supp. 2d 1047, 1053 (E.D. Cal. 2009).

1   "debt collection" under the FDCPA.

2          "The Fair Debt Collection Practices Act prohibits 'debt collector[s]' from making

3   false or misleading representations and from engaging in various abusive and unfair practices."

4   Heintz v. Jenkins, 541 U.S. 291, 292 (1995) (second modification in original).  In order to be

5   liable under the FDCPA, a defendant must fall within the statutory definition of "debt collector"

6   and have been engaged in the collection of a debt.  See Izenberg v. ETS Servs., LLC, 589 F.

7   Supp. 2d 1193, 1198-99 (C.D. Cal. 2008).  The FDCPA defines a "debt collector" generally as

8   "any person who uses any instrumentality of interstate commerce or the mails in any business the

9   principal purpose of which is the collection of any debts, or who regularly collects or attempts to

10  collect, directly or indirectly, debts owed or due or asserted to be owed or due another."

11  15 U.S.C. § 1692a(6).  In addition, district courts in this Circuit have persuasively held that the

12  act of foreclosing on a property pursuant to a deed of trust is not the collection of a debt within

13  the meaning of the FDCPA.  Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D.

14  Or. 2002) ("[T]he activity of foreclosing on the property pursuant to a deed of trust is not the

15  collection of a debt within the meaning of the FDCPA.");  accord Lipscomb v. Mortgage Elec.

16  Registration Sys., Inc., No. 1:11–CV–497 AWI JLT, 2011 WL 3361132, at *8 (E.D. Cal. Aug. 3,

17  2011) (unpublished) (collecting cases); Arvizu v. GMAC Mortgage, LLC, No. 1:10-cv-00990-

18  OWW-JLT, 2011 WL 1087157, at *3-4 (E.D. Cal. Mar. 23, 2011) (unpublished) (rejecting

19  claims that foreclosing on the plaintiff's property and filing an unlawful detainer action

20  supported cognizable claims under the FDCPA).[17]

21          The undersigned concludes that even assuming that the Boyer Defendants, Citi,

22  the Fidelity Defendants, and the Deutsche Bank Defendants are considered "debt collectors"

23

24          [17]  In Hulse, the district court reasoned: "Foreclosing on a trust deed is distinct from the
     collection of the obligation to pay money.  The FDCPA is intended to curtail objectionable acts
25   occurring in the process of collecting funds from a debtor.  But, foreclosing on a trust deed is an
     entirely different path.  Payment of funds is not the object of the foreclosure action.  Rather, the
26   lender is foreclosing its interest in the property."  Hulse, 195 F. Supp. 2d at 1204.

under the FDCPA, which is unsupported, these defendants participated in the foreclosure of the subject property pursuant to the Deed of Trust and were not engaged in the collection of a debt under the FDCPA.  Additionally, the unlawful detainer action filed in Nevada County Superior Court simply sought possession of the already re-sold property, not the collection of any debt.  Accordingly, the undersigned recommends that plaintiffs' first, second, and third claims for relief be dismissed.  Based on prevailing case law, plaintiffs will be unable to amend their Amended Complaint to state a claim under the FDCPA.  As a result, the undersigned recommends that plaintiffs' FDCPA claims be dismissed with prejudice.

2.     Plaintiffs' Negligence Claim (Claim 4)

Plaintiffs allege a claim of negligence against all defendants.  (Am. Compl. ¶¶ 62-66.)  The only specific factual allegation included in this claim is that "DEUTSCHE and BOYER have negligently attempted to compel Plaintiff's [sic] to abandon property they rightfully own.  Actions taken by Defendants, (foreclosure, and threatened unlawful detainer) are void."  (Am. Compl. ¶ 63.)

Generally, "[t]o prevail on [a] negligence claim, plaintiffs must show that [the defendant] owed them a legal duty, that it breached the duty, and that the breach was a proximate or legal cause of their injuries."  Merrill v. Navegar, Inc., 26 Cal. 4th 465, 477, 28 P.3d 116, 123 (2001).  "'The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide.'"  Castaneda v. Saxon Mortgage Servs., Inc., 687 F. Supp. 2d 1191, 1197 (E.D. Cal. 2009) (quoting Vasquez v. Residential Invs., Inc., 118 Cal. App. 4th 269, 278, 12 Cal. Rptr. 3d 846 (Ct. App. 2004)).

Here, plaintiffs have not alleged any facts establishing that any of the defendants in this case owed them a legal duty under California law or that those defendants breached such a legal duty.  Plaintiffs have offered no authority, and the undersigned has found none, supporting the contention that an attorney or law firm pursuing an unlawful detainer action following a foreclosure and trustee's sale owes a legal duty to purported assignees of the original defaulting

1  borrowers.  Additionally, "[a]bsent 'special circumstances' a loan transaction 'is at arms-length

2  and there is no fiduciary relationship between the borrower and lender.'"  Rangel v. DHI

3  Mortgage Co., No. CV F 09-1035 LJO GSA, 2009 WL 2190210, at *3 (E.D. Cal. July 21, 2009)

4  (unpublished) (citing Oaks Mgmt. Corp. v. Superior Court, 145 Cal. App. 4th 453, 466, 51 Cal.

5  Rptr. 3d 561 (Ct. App. 2006)).  And "as a general rule, a financial institution owes no duty of

6  care to a borrower when the institution's involvement in the loan transaction does not exceed the

7  scope of its conventional role as a mere lender of money."  Nymark v. Heart Fed. Sav. & Loan

8  Ass'n, 231 Cal. App. 3d 1089, 283 Cal. Rptr. 53, 56 (Ct. App. 1991); see also Wagner v. Benson,

9  101 Cal. App. 3d 27, 35, 161 Cal. Rptr. 516 (Ct. App. 1980) ("Liability to a borrower for

10  negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond

11  the domain of the usual money lender'" (citation omitted).).  Similarly, a loan servicer and a

12  trustee under a deed of trust owe no legal duty to a borrower in an arms-length transaction that

13  would support  a negligence claim.  See Wong v. Am. Servicing Co., No. 2:09-CV-01506

14  FCD/DAD, 2009 WL 5113516, at *5-6 (E.D. Cal. Dec. 18, 2009) (unpublished).  Plaintiffs'

15  allegations support that the Chagnon's and some of the defendants were engaged in, at most, an

16  arms-length financial transaction.  Moreover, plaintiffs cannot substantiate any stronger legal

17  duty running from any defendant to plaintiffs where plaintiffs were not even the original

18  borrowers.  The undersigned finds no basis for a legal duty as between any of the defendants and

19  plaintiffs and, accordingly, recommends that the negligence claim be dismissed with prejudice.

20         3.    Plaintiffs' Slander of Title Claim (Claim 5)

21       Plaintiffs' fifth claim is for slander of title, and it is specific to plaintiff

22  Willardson.  (See Am. Compl. ¶¶ 68-69.)  In substance, plaintiffs only allege that "Defendants

23  filing of TRUSTEE'S DEED UPON SALE which is a void instrument and conveyance has

24  caused a 'cloud on the title' of the interest of Plaintiff Willardson."  (Id. ¶ 68.)

25       As an initial matter, only defendants Fidelity National Title Company and Power

26  Default Services, Inc. could be liable for the tort alleged because Power Default Services, Inc.

1   was the trustee listed on the and Fidelity National Title Company recorded the Trustee's Deed

2   Upon Sale.  (See Boyer Defs.' RFJN, Ex. F.)  Accordingly, the undersigned recommends that this

3   claim be dismissed with prejudice as to all other defendants.

4     Turning to the merits of the claim, "[s]lander of title 'occurs when a person,

5   without a privilege to do so, publishes a false statement that disparages title to property and

6   causes pecuniary loss.'"  Kennedy v. Lehman Bros. Bank, FSB, No. 10-CV-1516 JLS (AJB),

7   2010 WL 4537831, at *3 (S.D. Cal. Nov. 2, 2010) (unpublished) (quoting Truck Ins. Exch. v.

8   Bennett, 53 Cal. App. 4th 75, 84, 61 Cal. Rptr. 2d 497, 503 (Ct. App. 1997).  "The elements of

9   the tort are (1) publication, (2) absence of justification, (3) falsity and (4) direct pecuniary loss."

10  Truck Ins. Exch., 53 Cal. App. 4th at 84, 61 Cal. Rptr. at 503 (citation and quotation marks

11  omitted).

12    Here, defendants Fidelity National Title Company and Power Default Services,

13  Inc. argue that plaintiffs' slander of title claim fails as a matter of law because the recording of

14  the Trustee's Deed Upon Sale in connection with the non-judicial foreclosure was absolutely

15  privileged under California Civil Code §§ 47(b) and 2924(d).  California Civil Code §§ 2924 et

16  seq. govern non-judicial foreclosure in California, and section 2924(d) provides:

17    (d) All of the following shall constitute privileged communications
      pursuant to Section 47:

18

19     (1) The mailing, publication, and delivery of notices as required by this
      section.

20     (2) Performance of the procedures set forth in this article.

21     (3) Performance of the functions and procedures set forth in this article
      if those functions and procedures are necessary to carry out the duties

22    described in Sections 729.040, 729.050, and 729.080 of the Code of Civil
      Procedure.

23

24  There is a split of authority regarding whether, as suggested by the defendants here, the absolute

25  privilege in California Civil Code § 47(b) applies to the recording of documents required under

26  California's foreclosure laws, or whether the qualified privilege found in California Civil Code

21

1    § 47(c) applies.  <u>See</u> <u>Salondaka v. Countrywide Home Loans, Inc.</u>, No. 2:09-cv-01550-JAM-

2    JEM, 2010 WL 529361, at *4 (E.D. Cal. Jan. 28, 2010) (unpublished).

3            However, assuming only the qualified privilege in California Civil Code § 47(c)

4    applies, plaintiffs' slander of title claim fails because plaintiffs have not alleged, and cannot

5    reasonably allege, actual malice on the part of Fidelity National Title Company or Power Default

6    Services, Inc.  Section 47(c)(1) provides in pertinent part that "[a] privileged publication or

7    broadcast is one made . . . [i]n a communication, without malice, to a person interested therein,

8    (1) by one who is also interested . . . ."  Cal. Civ. Code § 47(c)(1).  Courts have held that

9    "section 2924 deems the statutorily required mailing, publication, and delivery of notices in

10   nonjudicial foreclosure, and the performance of statutory nonjudicial foreclosure procedures, to

11   be privileged communications under the qualified common-interest privilege of section 47,

12   subdivision (c)(1)."  <u>See</u> <u>Kalchon v. Markowitz</u>, 168 Cal. App. 4th 316, 333, 85 Cal. Rptr. 3d

13   532, 545 (Ct. App. 2008); <u>accord</u> <u>Consumer Solutions REO, LLC v. Hillery</u>, 658 F. Supp. 2d

14   1002, 1017-19 (N.D. Cal. 2009).  Here, the recording of the Trustee's Deed Upon Sale is subject

15   to a qualified privileged, and plaintiffs have not alleged actual malice on the part of the recording

16   parties.  Because nothing in the Amended Complaint or the record suggests that plaintiffs could

17   plead facts in a further amended complaint substantiating actual malice in the recording of the

18   Trustee's Deed Upon Sale, the undersigned recommends that plaintiffs' slander of title claim be

19   dismissed with prejudice.

20           4.      <u>Plaintiffs' Claim for Negligent Hiring, Supervision, Training, or Retention</u>
                     <u>(Claim 7)</u>

21

22           In addition to their ordinary negligence claim, plaintiffs also allege a claim for

23   "Negligent or Wanton Hiring, Supervision, Training or Retention."  (Am. Compl. ¶¶ 75-77.)  The

24   only somewhat specific allegation supporting this claim is that "Plaintiffs believe defendants

25   negligently or wantonly hired, trained, supervised and retained their employees in an ongoing

26   scheme to defraud Plaintiffs and others of their real property through the non-judicial foreclosure

1  process in California." (Id. ¶ 76.)

2        "California case law recognizes the theory that an employer can be liable to a third

3  person for negligently hiring, supervising, or retaining an unfit employee." Doe v. Capital Cities,

4  50 Cal. App. 4th 1038, 1054, 58 Cal. Rptr. 2d 122, 132 (Ct. App. 1996).  "Liability for negligent

5  hiring . . . is based upon the reasoning that if an enterprise hires individuals with characteristics

6  which might pose a danger to customers or other employees, the enterprise should bear the loss

7  caused by the wrongdoing of its incompetent or unfit employees." Phillips v. TLC Plumbing,

8  Inc., 172 Cal. App. 4th 1133, 1139, 91 Cal. Rptr. 3d 864, 868 (Ct. App. 2009) (citation and

9  quotation marks omitted, modification in original).  "Negligence liability will be imposed on an

10 employer if it 'knew or should have known that hiring the employee created a particular risk or

11 hazard and that particular harm materializes.'" Id. (citing Capital Cities, 50 Cal. App. 4th at

12 1054, 58 Cal. Rptr. 2d 122)).  "Liability for negligent supervision and/or retention of an

13 employee is one of direct liability for negligence, not vicarious liability." Delfino v. Agilent

14 Tech., Inc., 145 Cal. App. 4th 790, 815, 52 Cal. Rptr. 3d 376, 397 (Ct. App. 2006).

15       Plaintiffs' generalized allegations fall far short of establishing the elements stated

16 above.  Not only do plaintiffs' allegations not establish negligence generally, as discussed above,

17 the allegations specific to the claim of negligent hiring, supervision, training or retention are too

18 vague to adequately plead any tort.  Plaintiffs neither identify specific defendants that are liable

19 for this tort nor specific employees that were negligently hired, supervised, trained, or retained.

20 Indeed, plaintiffs have not even put defendants on notice of the nature of the negligence alleged,

21 i.e., whether the negligence occurred in the context of hiring, supervision, training, or retention.

22 Nothing in the Amended Complaint suggests that plaintiffs could successfully amend their

23 complaint to state a cognizable claim and, accordingly, the undersigned recommends that

24 plaintiffs' seventh claim for relief be dismissed with prejudice.

25       5.   Plaintiffs' Wrongful Foreclosure Claim (Claim 9)

26       Plaintiffs' ninth claim alleges wrongful foreclosure.  (Am. Compl. ¶¶ 84-87.)

1   Plaintiffs allege that all defendants completed a foreclosure proceeding that was "ultra vires" and

2   in violation of law.  The undersigned recommends that plaintiffs' wrongful foreclosure claim be

3   dismissed because plaintiffs have not made an unconditional tender of the entire indebtedness.

4           "Under California law, in an action to set aside a trustee's sale, a plaintiff must

5   demonstrate that he has made a valid and viable tender [offer] of payment of the indebtedness."

6   Pantoja v. Countrywide Home Loans, Inc., 640 F. Supp. 2d 1177, 1183-84 (N.D. Cal. 2009)

7   (citations and quotation marks omitted); see also Alcaraz v. Wachovia Mortgage FSB, 592 F.

8   Supp. 2d 1296, 1304 (E.D. Cal. 2009) ("'A valid and viable tender of payment of the

9   indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust.'")

10  (citing Karlsen v. Am. Sav. & Loan Ass'n, 15 Cal. App. 3d 112, 92 Cal. Rptr. 851 (Ct. App.

11  1971)).  A tender must be one of full performance and must also be unconditional.  Arnolds

12  Mgmt. Corp. v. Eischen, 158 Cal. App. 3d 575, 580, 205 Cal. Rptr. 15, 18 (Ct. App. 1984).  The

13  California Court of Appeal has held that the tender rule applies in an action to set aside a

14  trustee's sale for irregularities in the sale notice or procedure and has stated that "[t]he rationale

15  behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures

16  been proper, any irregularities in the sale did not result in damages to the plaintiffs."  FPCI RE-

17  HAB 01 v. E & G Invs., Ltd., 207 Cal. App. 3d 1018, 1021, 255 Cal. Rptr. 157, 160 (Ct. App.

18  1989).  Furthermore, a party must allege full tender "in order to maintain any cause of action for

19  irregularity in the sale procedure."  Abdallah v. United Savs. Bank, 43 Cal. App. 4th 1101, 1109,

20  51 Cal. Rptr. 2d 286, 292 (Ct. App. 1996), cert. denied 519 U.S. 1081 (1997); see also Arnolds

21  Mgmt. Corp., 158 Cal. App. 3d at 579, 205 Cal. Rptr. at 18 ("A cause of action 'implicitly

22  integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender"

23  (citation omitted)).  This rule also generally applies to a claim to cancel a voidable sale under a

24  deed of trust.  See Karlsen, 15 Cal. App. 3d at 117, 92 Cal. Rptr. at 854 ("A valid and viable

25  tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale

26  under a deed of trust.").

1      Here, plaintiffs rely on Exhibit H to their original Complaint, which consists of a

2  letter dated June 25, 2010, from plaintiff McFadden to Fidelity National Title Company and

3  Power Default Services, Inc., to substantiate their claim that they made an appropriate tender of

4  the indebtedness under the tender rule.[18]  However, a review of this letter reveals two fatal flaws

5  in regards to the tender rule.  First, the letter is ambiguous as to whether plaintiffs were willing to

6  pay the entire indebtedness, or simply the amount in arrears on the loan.  The letter states: "As

7  assignee, I am prepared to bring this account to complete satisfaction upon receipt of your

8  demand for any interest you claim in these instruments."  Second, even assuming that the letter

9  conveyed a tender of the entire indebtedness, the tender was conditional.  The June 25, 2010

10  letter conditioned any suggested payment by McFadden on compliance with a request for

11  production of documents attached to the letter.  Additionally, the letter and the attached request

12  for production of documents convey an underlying and legally unsound contention, addressed

13  above, that Fidelity National Title Company or Power Default Services, Inc. would have to

14  produce the "original note" as a condition to the payment of the indebtedness.  Because the

15  tender here was conditional, it fails under the tender rule.  Accordingly, the undersigned

16  recommends that plaintiffs' wrongful foreclosure claim be dismissed with prejudice.

17              6.      Plaintiffs' Claim for Unjust Enrichment (Claim 10)

18          Plaintiffs allege a claim for unjust enrichment consisting of the allegation that

19  "each defendant" has been unjustly enriched by "avoiding payment of recording fees, insurance

20  claim proceeds, sale and conversion of the Original Note into a Mortgage Backed Security, and

21  now without the ability to reconvey the equity in the property."  (Am. Compl. ¶ 89.)

22          As an initial matter, there is a split of authority in regards to whether a claim for

23  unjust enrichment is a separate, stand-alone claim or simply a remedy.  See Davenport v. Litton

24

25      [18]  Although the Amended Complaint does not expressly allege an unconditional tender of
the Chagnons' entire indebtedness, plaintiffs claims that they made such a tender at the hearing and
26  pointed to the June 25, 2010 letter.

1   Loan Servicing, L.P., 725 F. Supp. 2d 862, 885 (N.D. Cal. 2010) ("Courts in this state and

2   district diverge on whether unjust enrichment functions as an independent claim or is instead an

3   effect that must be tethered to a distinct legal theory to warrant relief.  Some courts have read a

4   plaintiff's 'claim' for unjust enrichment as a claim for relief.").  As summarized in Davenport:

> Under both views, the effect of unjust enrichment is remedied with
> some form of restitution.  A plaintiff advances a basis for obtaining
> restitution if he or she demonstrates defendant's receipt and unjust
> retention of a benefit.  The fact that one person benefits another is not, by
> itself, sufficient to require restitution.  Instead, [the] person receiving the
> benefit is required to make restitution only if the circumstances are such
> that, as between the two individuals, it is unjust for the person to retain it.

9   Id. (citations and quotation marks omitted).

10          As an initial matter, even assuming that any of the defendants were unjustly

11  enriched, such unjust enrichment was not at plaintiffs' expense; if anything, any unjust

12  enrichment was at the Chagnons' expense.  In any event, plaintiffs' unjust enrichment claim is

13  fatally unintelligible.  It is not clear what acts plaintiffs allege gave rise to any unjust enrichment.

14  Moreover, it is not clear that how any defendant was unjustly enriched by "avoiding payment of

15  recording fees"—indeed, some of the defendants ostensibly paid those fees.  Furthermore, it is

16  unclear what insurance claim proceeds, if any, were not paid by defendants.  This claim, which is

17  speculative at best, should be dismissed with prejudice.

18          7.      Plaintiffs' Fraudulent Misrepresentation Claim (Claim 12)

19          Plaintiffs' twelfth claim for relief indiscriminately alleges fraud committed by all

20  defendants.  (See Am. Compl. ¶¶ 96-97.)  Plaintiffs' fraud claim, which seeks to render the

21  foreclosure void, is premised on two fatally flawed contentions.  First, plaintiffs' contend that

22  defendants lacked proper standing to foreclose and thus foreclosed on the deed of trust without

23  any beneficial interest in the property.  Second, plaintiffs contend that defendants failed to follow

24  mandatory steps under California's foreclosure laws prior to carrying out the foreclosure.

25          The elements of an intentional misrepresentation claim under California law are:

26  "(1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's

reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." <u>Conroy v.</u>
<u>Regents of Univ. of Cal.</u>, 45 Cal. 4th 1244, 1255, 203 P.3d 1127, 1135 (2009); <u>accord</u> <u>Lazar v.</u>
<u>Superior Court</u>, 12 Cal. 4th 631, 638, 909 P.2d 981, 984 (1996).  In addition, as stated above, a
claim for fraud must be pled with particularity, <u>see</u> Fed. R. Civ. P. 9(b), including allegations
regarding the time, place, and specific content of the false representations, and the identities of
the parties to the misrepresentation.  <u>See</u> <u>Swartz</u>, 476 F.3d at 764; <u>see also</u> <u>Kearns</u>, 567 F.3d at
1124 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of
the misconduct charged.").

        The undersigned recommends that plaintiffs' fraud claim be dismissed because it
is not pled with the requisite particularity.  Additionally, the undersigned notes that plaintiffs
have not alleged any facts regarding how plaintiffs actually relied on any misrepresentations by
any of the defendants.  (<u>See</u> Am. Compl. ¶ 97i (alleging that "other entities such as the Nevada
County Tax Assessor and Recorder have relied on information which falsely represents
defendants as the alleged owners of Plaintiff's [<i>sic</i>] property")).)  Thus, plaintiffs' claim of fraud
does not adequately plead facts regarding the critical element of reliance.  Furthermore, the
undesigned recommends that plaintiffs' fraud claim be dismissed with prejudice because, as
stated above, it is based on two meritless theories.  The theory that parties foreclosing on a
property pursuant to a deed of trust must possess the original note is not supported by the law
applied in this Circuit.  <u>See</u>, <u>e.g.</u>, <u>Bennett</u>, 2011 WL 2493699, at *5.  Second, to the extent that
plaintiffs' claim of fraud is based on irregularities in the foreclosure process, the claim lacks
merit because, as addressed above, plaintiffs did not unconditionally tender payment of the entire
indebtedness.  For these reasons, the undersigned recommends that plaintiffs fraud claim be
dismissed with prejudice.

        8.      <u>Plaintiffs' "Claims" of Respondeat Superior Liability, Joint Venture</u>
                <u>Liability, and Civil Conspiracy (Claims 6, 8, and 11)</u>

        Plaintiffs allege "claims" for respondeat superior liability, joint venture liability,

27

and civil conspiracy.  (See Am. Compl. ¶¶ 70-74, 78-83, 92-95.)  These claims are alleged in

conclusory terms, and largely refer to one another.  (See, e.g., Am. Compl. ¶ 72 ("All of the

above named parties who are defendants in this action served at the request of the Trustee as a

nominee, alter-ego of the Trustee and/or as part of a joint venture with the Trustee.  These parties

are alleged . . . to be engaged in a civil conspiracy to engage in conduct which is unlawful for the

purpose of unjustly enriching the members or participants in this joint venture.").)  All of these

claims allege, in essence, a civil conspiracy.

The undersigned recommends that these "claims" be dismissed with prejudice

because none of them is actually an independent claim for relief; instead, they are doctrines

through which liability may be imposed on others on the basis of an agency relationship or

common plan to commit some underlying actionable conduct.  See Davenport, 725 F. Supp. 2d at

881 ("A conspiracy is not an independent cause of action, but is instead 'a legal doctrine that

imposes liability on persons who, although not actually committing a tort themselves, share with

the immediate tortfeasors a common plan or design in its perpetration.'") (quoting Applied

Equip. Corp. v. Litton Saudi Arabia Ltd., 7 Cal. 4th 503, 510-11, 869 P.2d 454 (1994)); Montoya

v. Countrywide Bank, FSB, 2009 WL 1813973, at *12 (N.D. Cal. June 25, 2009) (unpublished)

("Civil conspiracy, aiding and abetting, unlawful joint venture and injunctive relief are not

independent claims."); Lisa M. v. Henry Mayo Newhall Memorial Hosp., 12 Cal. 4th 291, 296,

907 P.2d 358, 360 (1995) ("The rule of respondeat superior is familiar and simply stated: an

employer is vicariously liable for the torts of its employees committed within the scope of the

employment.").  Because none of plaintiffs' other claims has merit, plaintiffs' claims premised

on the respondeat superior, joint venture, and civil conspiracy theories or doctrines also fail.

Accordingly, the undersigned recommends that plaintiffs' sixth, eighth, and eleventh claims be

dismissed with prejudice.

9. Plaintiffs' Declaratory Relief Claim (Claim 13)

Finally, plaintiffs allege a claim for declaratory relief that is based on their

1  underlying claims and theories, all of which the undersigned has recommended be dismissed.

2  (See Am. Compl. ¶¶ 98-107.)  The undersigned recommends that this claim be dismissed with

3  prejudice as well.

4          In seeking declaratory relief, a plaintiff must satisfy a two part test under the

5  Declaratory Judgment Act, 28 U.S.C. § 2201, demonstrating that a declaratory judgment is

6  appropriate.  See Principal Life Ins. Co. v. Robinson, 394 F.3d 665, 669 (9th Cir. 2005).  The

7  court must first determine if an actual case or controversy exists; then, the court must decide

8  whether to exercise its jurisdiction to grant the relief requested.  Id.

9          For declaratory relief, there must be a substantial controversy, between parties

10  having adverse legal interests, of sufficient immediacy and reality to warrant issuance of a

11  declaratory judgment.  Maryland Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941).

12  Unless an actual controversy exists, the district court is without power to grant declaratory relief.

13  Garcia v. Brownell, 236 F.2d 356, 357-58 (9th Cir. 1956).  The mere possibility, even

14  probability, that a person may in the future be adversely affected by official acts not yet

15  threatened does not create an "actual controversy."  Id.  Further, declaratory relief should be

16  denied if it will "neither serve a useful purpose in clarifying and settling the legal relations in

17  issue nor terminate the proceedings and afford relief from the uncertainty and controversy faced

18  by the parties."  United States v. Washington, 759 F.2d 1353, 1357 (9th Cir. 1985).

19          Here, the declaratory relief that plaintiffs seek is commensurate with the relief

20  sought through their other claims for relief.  Thus, plaintiffs' declaratory relief claim is

21  duplicative and unnecessary.  See Permpoon v. Wells Fargo Bank Nat. Ass'n, No. 09-CV-01140-

22  H (BLM), 2009 WL 3214321, at *5 (S.D. Cal. Sep. 29, 2009) (unpublished); accord Karimi v.

23  GMAC Mortgage, No. 11-CV-00926-LHK, 2011 WL 3360017, at *5 (N.D. Cal. Aug. 2, 2011)

24  (unpublished).  In addition, because the contentions underlying plaintiffs' declaratory relief

25  request are without basis in fact or law, they cannot establish an actual present controversy that

26  justifies this remedy.  Accordingly, there is no real, immediate controversy to adjudicate, and

1  plaintiffs' claim for declaratory relief should be dismissed.

2  VI.    <u>CONCLUSION</u>

3          In light of the foregoing, IT IS HEREBY ORDERED:

4          1.    The Fidelity Defendants' evidentiary objection (Dkt. No. 22 at 5-7) to the

5  "Foreclosure Investigation Report," which was prepared by Charles J. Horner and filed by

6  plaintiffs with their written opposition, is sustained.

7          2.    The Boyer Defendants' request for judicial notice (Dkt. No. 14) is granted.

8          3.    The Deutsche Bank Defendants' request for judicial notice (Dkt. No. 18,

9  Doc. No. 18-1) is granted.

10         It is FURTHER RECOMMENDED that:

11         1.    The Boyer Defendants' special motion to strike (Dkt. No. 13) brought

12  pursuant to California's anti-SLAPP statute be granted in part and denied in part.  The anti-

13  SLAPP motion should only be granted as to plaintiffs' claims for relief based on California law,

14  which are numbered four through twelve.  The undersigned further recommends that the Boyer

15  Defendants' motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) be

16  granted as to the remaining, federal claims numbered one, two, three, and thirteen.  All of

17  plaintiffs' claims against the Boyer Defendants should be dismissed with prejudice, and the

18  Boyer Defendants should be dismissed from this action.

19         2.    Citi's motion to dismiss (Dkt. No. 15) brought pursuant to Federal Rule of

20  Civil Procedure 12(b)(6) be granted, that all of plaintiffs' claims against Citi be dismissed with

21  prejudice, and that Citi be dismissed from this action.

22         3.    The Fidelity Defendants' motion to dismiss (Dkt. No. 16) brought

23  pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted, that all of plaintiffs' claims

24  against the Fidelity Defendants be dismissed with prejudice, and that the Fidelity Defendants be

25  dismissed from this action.

26         4.    The Deutsche Bank Defendants' motion to dismiss (Dkt. No. 18) brought

pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted, that all of plaintiffs' claims against the Deutsche Bank Defendants be dismissed with prejudice, and that the Deutsche Bank Defendants be dismissed from this action.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Id.; see also E. Dist. Local Rule 304(b). Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed with the court and served on all parties within fourteen days after service of the objections.  E. Dist. Local Rule 304(d). Failure to file objections within the specified time may waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

IT IS SO ORDERED AND RECOMMENDED.

DATED:  August 15, 2011

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

31